Nos. 15-50509, 16-50048, 16-50117, 16-50195, 16-50345

IN THE UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

———————————————————

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

JULIO RODRIGUEZ,

Defendant-Appellant.

———————————————————

Appeal from the United States District Court
for the Southern District of California
Honorable Roger T. Benitez, District Judge, Presiding

APPELLANT'S INDIVIDUAL SUPPLEMENTAL OPENING BRIEF

JOHN C. LEMON
1350 Columbia Street, Suite 600
San Diego, California 92101
Telephone: (619) 794-0423

Attorney for Mr. Rodriguez

# Table of Contents

Statement of Jurisdiction 1

Bail Status 2

Question Presented 2

Statement of Facts 3

Summary of Argument and Joinder 6

Argument
I.     The district court erred in instructing the jury that it should determine
drug quantity under 21 U.S.C. § 841(b) based on conduct that was
either "reasonably foreseeable" to Rodriguez or that "fell within
the scope" of Rodriguez's particular agreement. 7

     A.    Introduction and Pertinent Facts 7

     B.    Standard of Review 11

     C.    This Court has consistently held that the drug-quantity inquiry
for the acts of coconspirators under § 841(b) is the same as
under the sentencing guidelines, which require the conduct to
be *both* reasonably foreseeable and in furtherance of jointly
undertaken criminal activity. 11

     D.    Because the district court relied upon the jury's findings
regarding drug quantity to establish the base-offense level,
this was also an error under the sentencing guidelines. 14

Conclusion 16

Certificate of Related Cases 17

Certificate of Compliance 18

Certificate of Service 19

# Table of Authorities

*Apprendi v. New Jersey,*
    530 U.S. 466 (2000)      11

*United States v. Banuelos,*
    322 F.3d 700 (9th Cir. 2003)      11-13

*United States v. Becerra,*
    992 F.2d 960 (9th Cir. 1993)      7, 11-12

*United States v. Kilby,*
    443 F.3d 1135 (9th Cir. 2006)      15

*United States v. Lloyd,* 807 F.3d 1128 (9th Cir. 2015)      12-13

*United States v. Ortiz,*
    362 F.3d 1274 (9th Cir. 2004)      9, 12

*United States v. Torres,*
    2017 U.S. App. LEXIS 17197, (9th Cir. Sept. 6, 2017)      7, 11-13

*United States v. Vargem,*
    747 F.3d 724 (9th Cir. 2014)      15

## Statutes

18 U.S.C. § 1962(d)      1, 7

21 U.S.C. § 841(b)      passim

21 U.S.C. § 846      1, 7

18 U.S.C. § 3231      1

18 U.S.C. § 3742      2

28 U.S.C. § 1291      2

**Sentencing Guidelines**

USSG § 1B1.3(a)(1)(B)                                    12

IN THE UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) U.S.C.A. No. 16-50117 |
| | ) |
| Plaintiff-Appellee, | ) U.S.D.C. No. 13cr4514-BEN |
| | ) |
| v. | ) |
| | ) |
| **JULIO RODRIGUEZ,** | ) |
| | ) |
| Defendant-Appellant. | ) |
| _____ | ) |

## Statement of Jurisdiction

Julio Rodriguez appeals his convictions and sentences[1] for: 1) RICO

conspiracy; and 2) conspiracy to distribute methamphetamine and heroin. *See* 18

U.S.C. § 1962(d); 21 U.S.C. §§ 841(a)(1) & 846.

The district court asserted jurisdiction under18 U.S.C. § 3231 and entered

the judgment on April 8, 2016. CR 542; ER 327-31.[2] Rodriguez was actually

sentenced on March 21, 2016, and filed his notice of appeal the same day. CR 525.

---

[1]     Rodriguez's challenges to his conviction are presented in the
Appellant's Joint Opening Brief; this individual brief raises only a sentencing
issue.

[2]     "CR" refers to the Clerk's Record; "ER refers to the Appellants' Joint
Excerpts of Record (filed by Robert Collazo); "JRER" refers to Julio Rodriguez's
Excerpts of Record; "RT" refers to the Reporter's Transcript; "PSR" refers to the
Presentence Report.

This Court has jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. § 3742.

## Bail Status

Rodriguez is currently in the custody of the California Department of Corrections, serving a previous sentence imposed by a state court. He received a 175-month sentence after trial in this case.

## Question Presented

This Court has consistently held that the inquiry regarding drug-quantity liability for the acts of coconspirators under 21 U.S.C. § 841(b) is the same as under the guidelines. The guidelines, in turn, state that an individual should be held accountable only for the conduct of others that was *both*: 1) reasonably foreseeable; *and* 2) in furtherance of jointly undertaken activity. Did the court err by refusing this instruction, which was specifically requested by the defendants?

## Statement of Facts[3]

On December 19, 2013, the grand jury for the Southern District of California returned an indictment alleging a RICO conspiracy and a drug-trafficking conspiracy against Julio Rodriguez and 10 codefendants. CR 1; ER 72-101. Rodriguez and four remaining codefendants (Lino Delgado-Vidaca, Steven Amador, Isaac Ballesteros, and Robert Collazo) proceeded to trial, which began on June 3, 2015. CR 318.

Rodriguez is a native of Oceanside, California and the product of a broken home. In his early teen years he joined Oceanside Posole, a Hispanic street gang. By the age of 15 he was a heroin addict. His alleged participation in the conspiracies charged in this case occurred exclusively while he was an inmate in state prison. *See* PSR at 15-16; 5-8.

In general terms, the government alleged that Rodriguez was an associate (a "primo") of the Mexican Mafia and that he distributed methamphetamine and heroin in prison in furtherance of the alleged enterprise. Unlike every other alleged "primo" in this case, however, Rodriguez was *not* recorded on an illegal cell phone doing drug deals while in prison. Instead, the government alleged that Rodriguez used his wife, Angelica Rodriguez-Ibanez, to smuggle drugs into prison for him,

---

[3]     Rodriguez also incorporates by reference the Statement of Facts in the Appellants' Joint Opening Brief.

which he then allegedly distributed to others. Rodriguez-Ibanez cooperated with the government and testified against her husband at trial, stating that she smuggled drugs into prison for him on more than one occasion. The government, however, never asked Rodriguez-Ibanez how many times she actually smuggled drugs into prison for her husband. *See* 6-16-15 RT at 86-136.

Rodriguez's defense at trial was that he consumed copious amounts of heroin on a daily basis, that his involvement in smuggling drugs into prison was exclusively for his personal use, and that any distribution of the drugs – "paying thirds" to the Mexican Mafia – was incidental to his personal use and mandatory in order to avoid getting stabbed.

On cross-examination, Rodriguez-Ibanez – a licensed nurse – testified about the depths of her husband's heroin addiction. Specifically, Rodriguez-Ibanez stated that she had seen her husband inject himself with full syringes of heroin up to ten times per day and that sometimes she would have to help him do it. Rodriguez's addiction was so debilitating, in fact, that his wife would sometimes help him inject the drug into his muscles because he no longer had any usable veins. JRER 31-33.

Several corrections officers also testified about finding heroin or paraphernalia in Rodriguez's cell, as well as about incidents where Rodriguez had been disciplined for drug use (after testing positive for opioids). *See, e.g.,* JRER

13-14; 18-20.  And Arthur Fayer, a narcotics-dependency expert, testified that injecting into the muscles, rather than the veins, is evidence of "heavy addiction" because the user's "veins have collapsed."  JRER 47-49.  Fayer further opined that a "heavy" user would typically ingest four to five grams of heroin per day.  JRER 47.  Accordingly, Rodriguez was likely ingesting 28-35 grams per week or 112-180 grams every four weeks.

Significantly, the evidence at trial also established that Rodriguez's wife, Rodriguez-Ibanez, receives a $15,000, after-tax stipend from the Pechanga Indian Tribe *every* month (or $180,000 per year).  JRER 28-29.  This stipend far exceeded any income that Rodriguez might have received from selling narcotics in prison.[4]  Rodriguez-Ibanez further testified that she was spending about $1,500 per month to finance her husband's drug habit.  JRER 30.

Rodriguez was convicted of both counts but the jury answered the special interrogatories regarding methamphetamine in the negative.  CR 364; JRER 1-2.  With respect to Count 2, the jury found that the amount of heroin attributable to Rodriguez was 100 grams or more.  JRER 2.  At sentencing, the court imposed the high end of the guidelines range of 175 months.  This appeal follows.

---

[4]     By the government's own admission, the drug sales in this case generated only "nickels and dimes."  A cooperating witness, Ruben Savala testified that he was selling "nickels and dimes," 6-15-15 RT at 16, while an alleged coconspirator stated on a recorded call that he was worried about getting killed over $18.30.  6-10-17 RT at 103-04.

## Summary of Argument and Joinder

This Court has consistently held that, in arriving at drug-quantity liability for individual defendants involved in a conspiracy, the inquiry under 21 U.S.C. § 841(b) is the same as under the sentencing guidelines. *See United States v. Becerra,* 992 F.2d 960, 967 n.2 (9th Cir. 1993). The guidelines, in turn, clearly state that an individual defendant should be held accountable only for the conduct of others that was *both*: 1) reasonably foreseeable in connection with that criminal activity; *and* 2) in furtherance of the jointly undertaken criminal activity. *See* USSG § 1B1.3(a)(1)(B).

Here, although the defendants specifically requested this conjunctive formulation of the instruction, the government objected and the trial court instructed in the disjunctive. That is, it instructed the jury that an individual defendant could be held accountable for the conduct of others that was *either* reasonably foreseeable *or* in furtherance of jointly undertaken activity.

This Court was recently confronted with this issue in *United States v. Torres,* 2017 U.S. App. LEXIS 17197, (9th Cir. Sept. 6, 2017). The *Torres* court ultimately did not address the merits, however, because the defendants had failed to object at trial. Instead, a two-judge majority found that the defendants could not satisfy the plain-error standard of review. The issue not addressed in *Torres* is now squarely before this Court. Rodriguez also joins the arguments presented in the

trial defendants' joint brief.

## Argument

## I.

**The district court erred in instructing the jury that it should determine drug quantity under 21 U.S.C. § 841(b) based on conduct that was either "reasonably foreseeable" to Rodriguez or that "fell within the scope" of Rodriguez's particular agreement.**

## A.     Introduction and Pertinent Facts[5]

Each defendant was charged in Count One with RICO Conspiracy in violation of 18 U.S.C. § 1962(d) and in Count Two with a conspiracy to distribute methamphetamine and heroin in violation of 21 U.S.C. § 846.  With respect to Count One, in the event that the jury found the defendant guilty, it was also asked to make a special finding regarding whether "the government has proven beyond a reasonable doubt that defendant's agreement included the knowledge that a co-conspirator, not necessarily the defendant, would commit the following racketeering act in furtherance of the RICO conspiracy:  conspiracy to distribute more than 50 grams of pure methamphetamine or 500 grams of a mixture containing methamphetamine."  JRER 1 (verdict form); 4 (jury instruction).

With respect to Count Two, in the event that the jury found the defendant

---

[5]      In the interest of brevity, the jury's drug-quantity findings as to each appellant are recounted here and will be incorporated by reference by appellants raising issues related to these findings.

guilty, it was also asked whether it: 1) "further f[ound] beyond a reasonable doubt that [the] amount of methamphetamine that was reasonably foreseeable to him, or fell within the scope of his particular agreement, equaled or exceeded 50 grams of pure methamphetamine or 500 grams of a mixture containing methamphetamine in connection with this criminal activity"; and 2) "further f[ound] beyond a reasonable doubt that [the] amount of heroin that was reasonably foreseeable to him, or fell within the scope of his particular agreement, equaled or exceeded 100 grams of heroin in connection with this criminal activity."  JRER 2 (verdict form); 7-8 (jury instructions).

During the various jury-instruction conferences, the parties addressed the appropriate instruction for the jury's special findings regarding drug quantities. *See* JRER 20-24.  The defendants did not – at that time – request that the jury be instructed that individual defendants should be held accountable only for the conduct of others that was both: 1) reasonably foreseeable in connection with that criminal activity; and 2) in furtherance of the jointly undertaken criminal activity.

After a jury note requesting guidance on this issue,[6]  however, the defendants specifically requested that the trial court respond to the note by

---

[6]     The note read: "<u>Count 2.</u>  If we find the defendant guilty on Count 2, 'foreseeable to him or fell within the scope of his particular agreement equal to or exceeded 50 grams of pure meth or 500 grams of a mixture . . .'  Q.  Does this mean we have to determine if each defendant individually met the 50 / 500 gram requirement?  ER 315 (ellipsis in original).

instructing the jury that, in arriving at a drug quantity for individual defendants, it must only include criminal activity that was *both* jointly undertaken *and* reasonably foreseeable (i.e., the conjunctive formulation of the instruction). ER 9-23.

Counsel for Rodriguez, citing *United States v. Ortiz,* 362 F.3d 1274 (9th Cir. 2004), specifically asked that the court respond to the jury's note by instructing them on the "two prongs" of jointly undertaken and reasonably foreseeable activity:

> They're obviously asking for some clarification as to what is reasonably foreseeable and what constitutes activity undertaken within [a defendant's] particular agreement . . . Ninth Circuit law [] requires . . . for co-conspirator liability, it has to be jointly undertaken in furtherance of the criminal activity, as well as reasonably foreseeable. Those are two prongs. They both have to be there is my understanding. And the case I'm relying on is *United States v. Ortiz,* 362 F.3d 1274, 1275 (9th Circuit 2004).

ER 612. Counsel for Steven Amador reiterated this request:

> I would respond, in response to the notes, you are instructed as to . . . determining drug quantity as follows, if you find the defendant guilty of the charge in Count 2 of the indictment, you are then to determine as to that defendant whether the government proved beyond a reasonable doubt that the amount of – and parenthetically, this is if it is for the methamphetamine inquiry, the amount of methamphetamine that was – and here is the change of language – both, *both* would be new, reasonably foreseeable to him, and then it would also be new to say, and in furtherance of jointly undertaken activity equaled or exceeded 50 grams of actual methamphetamine or 500 grams of a mixture. And then I would repeat the same thing, but with the 100 grams of heroin. So in summary, the changes would be to add the

word *both* to the existing instructions.

ER 20-21.

The government objected that it "absolutely disagree[d]" and that "[the activity] doesn't need to be jointly undertaken." ER 15. The Court denied the defense request, instead referring the jury "back to the instructions" that they had already been given. ER 22-23. The jury found each defendant guilty of both counts. The jury's special findings with regard to each defendant were as follows:

| Defendant | Count | Question | Finding |
|---|---|---|---|
| Delgado | RICO Conspiracy | 50 / 500 grams meth | Yes |
| | § 846 Conspiracy | 50 / 500 grams meth | Yes |
| | | 100 grams heroin | No |
| Amador | RICO Conspiracy | 50 / 100 grams meth | Yes |
| | § 846 Conspiracy | 50 / 100 grams meth | No |
| | | 100 grams heroin | Yes |
| Ballesteros | RICO Conspiracy | 50 / 100 grams meth | Yes |
| | § 846 Conspiracy | 50 / 100 grams meth | No |
| | | 100 grams heroin | Yes |
| Rodriguez | RICO Conspiracy | 50 / 100 grams meth | No |
| | § 846 Conspiracy | 50 / 100 grams meth | No |
| | | 100 grams heroin | Yes |
| Collazo | RICO Conspiracy | 50 / 100 grams meth | Yes |
| | § 846 Conspiracy | 50 / 100 grams meth | Yes |
| | | 100 grams heroin | Yes |

**B.      Standard of Review**

Because the defendants specifically requested the conjunctive instruction

(i.e., that the criminal activity of others must have been *both* reasonably

foreseeable *and* jointly undertaken), in response to the jury's note, "their objection

was [] 'specific enough to bring into focus the precise nature of the alleged error"

and the standard of review is de novo.  *Cf. United States v. Torres,* 2017 U.S. App.

LEXIS 17197, *41, n.4 (9th Cir. Sept. 6, 2017) (holding that plain-error review

was appropriate where defendants did *not* specifically raise the conjunctive-

instruction issue in response to a jury note).

**C.      This Court has consistently held that the drug-quantity inquiry for the acts of coconspirators under § 841(b) is the same as under the sentencing guidelines, which require the conduct to be *both* reasonably foreseeable and in furtherance of jointly undertaken criminal activity.**

Title 21 sets forth increased sentencing ranges if an offense "involv[ed]"

certain threshold quantities of controlled substances.  21 U.S.C. § 841(b).  This

Court has consistently held that this quantity inquiry is the same as for quantity

determinations under the sentencing guidelines.  *United States v. Becerra,* 992 F.2d

960, 967 n.2  (9th Cir. 1993).  Even after *Apprendi v. New Jersey,*[7] this Court has

followed *Becerra* and continued to hold that the drug-quantity inquiry under the

guidelines and under § 841 is the same.  *See United States v. Banuelos,* 322 F.3d

---

[7]      530 U.S. 466 (2000).

700, 704 (9th Cir. 2003).

Further, since *Becerra* and *Banuelos,* this Court has "clarif[ied] the proper standard for determining relevant conduct for jointly undertaken criminal activity under USSG § 1B1.3(a)(1)(B) as amended in 1992:[8] the conduct must be *both* in furtherance of jointly undertaken activity *and* reasonably foreseeable." *United States v. Ortiz,* 362 F.3d 1274, 1275 (9th Cir. 2004) (emphasis in original).

Indeed, *Ortiz* overruled this Court's prior precedent, based on an older version of the Guidelines, which allowed a defendant to be held accountable for a quantity of drugs if it was *either* reasonably foreseeable *or* within the scope of his jointly undertaken activity. *Id.* at 1276-77. In making that clarification, this Court noted that more recent cases, such as *Banuelos*, had incorrectly recited the standard based on the older version of the guidelines. *Id.* at 1277. After this explanation, this Court joined the multiple other circuits to have considered the issue and held that the factfinder "must find that the conduct of others was *both* jointly undertaken *and* reasonably foreseeable" to sustain a drug quantity determination. *Id.* at 1277 (emphasis in original); *see also United States v. Lloyd,* 807 F.3d 1128, 1141-43

---

[8] This section was amended again in 2015, presumably to remove any lingering ambiguity. It now reads: In the case of a jointly undertaken criminal activity [the defendant is responsible for] all acts and omissions of others that were – (i) within the scope of the jointly undertaken criminal activity, (ii) in furtherance of that criminal activity, and (iii) reasonably foreseeable in connection with that criminal activity. USSG § 1B1.3(a)(1)(B) (2015).

(9th Cir. 2015) (explaining the implications of the "particularized findings" required under § 1B1.3)).

Recently, a three-judge panel of this Court was confronted with this precise issue (under § 841(b)) but did not address its merits because the defendants had not preserved it in the district court and the panel majority found that the defendants could not satisfy the plain-error standard. *Torres,* 2017 U.S. App. LEXIS 17197 at *41. Specifically, the *Torres* majority found that "[b]ecause the defendants did not object to [the erroneous instruction] on the basis they raise here, the plain error standard of review applies." It then went on to affirm the convictions and sentences under that standard. *See id.*

Coincidentally, the defendants in both *Torres* and in this case objected to the relevant jury instruction(s) after receiving a jury note. *See id.* at n.4. The defendants in *Torres* did not, however, raise the specific objection raised by the defendants here: that the trial court was required to instruct on *both* reasonable foreseeability *and* jointly undertaken activity (i.e., in the conjunctive). *Id.* Accordingly, while the error was not preserved in *Torres,* it is preserved here. This Court is thus again confronted with this question – but this time under de novo review.

And although the *Torres* majority ultimately did not resolve this issue, it did observe that the defendants made a "strong" and "straightforward" argument:

> The defendants' argument is straightforward. If our holdings in *Becerra, Mesa-Farias,* and *Banuelos* require that the same standard be applied when sentencing for a conspiracy under § 841(b) as under the Guidelines, defendants argue, then when *Ortiz* changed the test to be applied under the Guidelines it also changed the test to be applied under § 841(b). That is a strong argument. . . . In connection with § 841(b), this court has clearly held, on at least three separate occasions, that the same approach should be applied when analyzing culpability under § 841(b) as is applied under the Guidelines.

*Id.* at \*37. Indeed. Yet the jury here may well have increased Rodriguez's liability under Title 21 based on the conduct of coconspirators that was *either* reasonably foreseeable *or* in furtherance of jointly undertaken activity. This was error.

## D. Because the district court relied upon the jury's findings regarding drug quantity to establish the base-offense level, this was also an error under the sentencing guidelines.

The jury's finding that Rodriguez was responsible for at least 100 grams of heroin also served as the "floor," or starting point, for the district court's guidelines calculations. And although the government argued that the court should adopt a base-offense level 26, which would reflect at least 400 grams of heroin, *see* CR 451, the court ultimately adopted the offense-level 24 recommended by U.S. Probation based on the jury's finding. *See* Addendum to PSR at 1-2; JRER 58-61; 74. In making that determination, the court expressed its view that it "could use the more than [] 400 grams of heroin . . . in order to arrive at a higher base offense level" but that the lower offense level would result in a reasonable sentence. JRER 74. The court – relying upon the jury's verdict – made no findings regarding

14

whether the 100 grams of heroin was both jointly undertaken and reasonably foreseeable to Rodriguez, as required by the guidelines.

This base-offense level (after a two-level increase for distribution in prison and a two-level increase for aggravating role) resulted in a guidelines range of 140-175 months. The court imposed the high end of 175 months.

Again, the plain language of the guidelines, as well as this Court, require drug-quantity findings based on the conduct of others to be both reasonably foreseeable and in furtherance of jointly undertaken activity. *See* USSG § 1B1.3(a)(1)(B); *Lloyd,* 807 F.3d at 1141-43. The court's adoption of the quantity found by the jury under a lower (either / or) standard of proof was accordingly also error under the guidelines. And this Court has held time and again that such an error requires a new sentencing hearing. *See, e.g., United States v. Kilby,* 443 F.3d 1135, 1140 (9th Cir. 2006); *United States v. Vargem,* 747 F.3d 724, 727-29 (9th Cir. 2014).

## Conclusion

Rodriguez's jury was misinstructed on the law regarding its drug-quantity findings when the trial court overruled his objections. The jury then rendered a special finding that he was responsible for at least 100 kilograms of heroin, which increased his mandatory-minimum sentence to five years and his statutory-maximum sentence to 40 years.

The district court then relied on the jury's findings to set the base-offense level under the sentencing guidelines. These errors impacted Rodriguez's sentencing range under the guidelines and this Court should remand for resentencing.

Respectfully submitted,

Dated: October 11, 2017

/s John C. Lemon
**JOHN C. LEMON**
1350 Columbia Street, Suite 600
San Diego, California 92101
619-794-0423

Attorney for Mr. Rodriguez

## Certificate of Related Cases

Undersigned counsel is aware of the following related cases (in addition to co-appellants contemporaneously filing a joint brief):

- United States v. Garibay, 16-50098

- United States v. Ruvalcaba-Morales, 15-50563


Dated: October 11, 2017        /s John C. Lemon
                                         **JOHN C. LEMON**

**Certificate of Compliance**

Pursuant to Fed. R. App. P. 32(a)(7)(C) and Ninth Circuit Rule 32-1, the attached opening brief is proportionately spaced, has a typeface of 14 points or more, and contains 3,024 words.

Date: October 11, 2017

/s John C. Lemon
**JOHN C. LEMON**

**Certificate of Service**

I hereby certify that on October 11, 2017, I electronically filed the foregoing opening brief with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system.

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

Dated: October 11, 2017                    /s John C. Lemon_____
                                                            **JOHN C. LEMON**