Nos. 15-50509, 16-50048, 16-50117, 16-50195, 16-50345
_____

UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT
_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

ROBERT COLLAZO, LINO DELGADO-VIDACA,
JULIO RODRIGUEZ, STEVEN AMADOR,
ISAAC BALLESTEROS,

Defendant-Appellants.
_____

Appeal from the
United States District Court
for the Southern District of California
Honorable Roger T. Benitez Presiding
_____

APPELLANTS' SUPPLEMENTAL BRIEF
_____

GARY P. BURCHAM
Burcham & Zugman
402 West Broadway, Suite 1130
San Diego, California 92101
(619) 699-5930
Attorney for Robert Collazo

MARTIN G. MOLINA
Law Office of Martin G. Molina
185 West F Street, Suite 100
San Diego, CA 92101
(619) 232-0620
Attorney for Lino Delgado-Vidaca

JOHN C. LEMON
Law Office of John C. Lemon
1350 Columbia Street, Ste 600
San Diego, CA 92101
(619) 794-0423
Attorney for Julio Rodriguez

BENJAMIN L. COLEMAN
Coleman & Balogh, LLP
1350 Columbia St. #600
San Diego, CA 92101
(619) 794-0420
Attorney for Steven Amador

TIMOTHY A. SCOTT
Scott Trial Lawyers, APC
1350 Columbia Street, Suite 600
San Diego, CA 92101
(619) 794-0451
Attorney for Steven Amador

VICTOR N. PIPPINS
Law Offices of Victor Pippins
225 Broadway, Suite 2100
San Diego, CA 92101
(619) 239-9457
Attorney for Isaac Ballesteros

# TABLE OF CONTENTS

Introduction .........................................................................................1

Argument ............................................................................................3

   I.   Jefferson ...................................................................................3

     A.  Supreme Court precedent requires this interpretation...........4

       1.  A presumption of mens rea applies. ......................................4

       2.  The presumption is not rebutted. ......................................14

       3.  The rule of lenity and doctrine of constitutional avoidance also support this interpretation. ...............................................19

     B.  This Court should not continue to follow the line of cases cited by the lead opinion in *Jefferson*. ...................................................22

   II.  Feola ......................................................................................29

     A.  Conspiracy under *Ocasio* requires specific intent that "some conspirator commit each element of the substantive offense."....30

     B.  *Feola* is limited to jurisdictional elements. ...........................33

     C.  Unlike purely jurisdictional elements, drug type and quantity elements are germane—they create aggravated offenses. ..........36

     D.  This Court has not extended *Feola* to this context. ...............38

   III.  Gentry ..................................................................................43

Conclusion .......................................................................................50

Certificate Of Compliance ............................................................51

# TABLE OF AUTHORITIES

**Federal Cases**

*Alleyne v. United States,*
  570 U.S. 99 (2013) ................................................... 8, 9, 12

*Apprendi v. New Jersey,*
  530 U.S. 466 (2000) ....................................................... 8

*Bifulco v. United States,*
  447 U.S. 381 (1980) ...................................................... 19

*Burrage v. United States,*
  571 U.S. 204 (2014) ...................................................... 12

*Castillo v. United States,*
  530 U.S. 120 (2000) ................................................... 45-46

*Dean v. United States,*
  556 U.S. 568 (2009) ....................................................... 8

*Dorsey v. United States,*
  567 U.S. 260 (2012) .................................................. 3, 46

*Elonis v. United States,*
  135 S. Ct. 2001 (2015) .................................................... 6

*Flores-Figueroa v. United States,*
  556 U.S. 646 (2009) ........................... 1, 2, 6, 12, 13, 15, 17

*Flores-Figueroa v. United States,*
  2009 WL 191837 (2009) ................................................. 11

*Harris v. United States,*
  536 U.S. 445 (2002) ....................................................... 8

*Honeycutt v. United States,*
  137 S. Ct. 1626 (2017) .......................................... 3, 46, 47

*Jones v. United States,*
  526 U.S. 227 (1999) .............................................. 14, 19, 22

*Ladner v. United States,*
    358 U.S. 169 (1958) .......................................................... 19

*Lambert v. California,*
    355 U.S. 225 (1957) .......................................................... 20

*Liparota v. United States,*
    471 U.S. 419 (1985) ...................................................... 6, 17

*McFadden v. United States,*
    135 S. Ct. 2298 (2015) ......................................................... 6

*Morissette v. United States,*
    342 U.S. 246 (1952) ............................... 5, 6, 14, 15, 16, 20

*Neder v. United States,*
    527 U.S. 1 (1999) .............................................................. 39

*Ocasio v. United States,*
    136 S. Ct. 1423 (2016) ............................................... 2, 29, 30

*Pinkerton v. United States,*
    328 U.S. 640 (1946) ................................................ 3, 48, 49

*Posters 'N' Things, Ltd. v. United States,*
    511 U.S. 513 (1994) ........................................................... 6

*Rehaif v. United States,*
    139 S. Ct. 2191 (2019) ............................................. 2, 13, 15

*Rosemond v. United States,*
    572 U.S. 65 (2014) ............................................................ 21

*Salinas v. United States,*
    522 U.S. 52 (1997) ....................................................... 30, 31

*Shular v. United States,*
    ___ S. Ct. ___, No. 18-6662, 2020 WL 908904 (Feb. 26, 2020) ......... 47

*Staples v. United States,*
    511 U.S. 600 (1994) .................................................. 6, 16, 17

*Stokes v. United States,*
    157 U.S. 187 (1895) .......................................................... 38

*Torres v. Lynch,*
    136 S. Ct. 1619 (2016) ................................................. 6, 39

*United State v. X-Citement Video, Inc.,*
    513 U.S. 64 (1994) ............................................... 6, 16, 17

*United States v. Anderson,*
    932 F.3d 344 (2019) .................................. 2, 29, 32, 42, 45

*United States v. Bailey,*
    444 U.S. 394 (1980) ...................................................... 6, 14

*United States v. Baker,*
    63 F.3d 1478 (9th Cir. 1995) .................................... 38, 39

*United States v. Balint,*
    285 U.S. 250 (1922) .......................................................... 25

*United States v. Buckland,*
    289 F.3d 558 (9th Cir. 2002) ......................... 8, 14, 27, 36

*United States v. Burwell,*
    690 F.3d 500 (D.C. Cir. 2012) ................................. *passim*

*United States v. Carranza,*
    289 F.3d 634 (9th Cir. 2002) ........................................ 28

*United States v. Castaneda,*
    9 F.3d 761 (9th Cir. 1993) ............................................. 49

*United States v. Cortes,*
    757 F.3d 850 (9th Cir. 2013) .......................................... 7

*United States v. Dado,*
    759 F.3d 550 (6th Cir. 2014) ............................. 5, 9, 16, 28

*United States v. Davis,*
    139 S. Ct. 2319 (2019) ............................................ 19, 24

*United States v. Davis,*
    501 F.2d 1344 (9th Cir. 1974) ...................................... 24

*United States v. Espinoza-Valdez,*
    889 F.3d 654 (9th Cir. 2018) ........................................ 31

*United States v. Feola*,
420 U.S. 671 (1975) ................................................ *passim*

*United States v. Franklin*,
321 F.3d 1231 (9th Cir. 2003) ......................................... 5

*United States v. Franklin*,
561 F.3d 398 (5th Cir. 2009) ......................................... 44

*United States v. Games-Perez*,
695 F.3d 1104 (10th Cir. 2012) ....................................... 23

*United States v. Garrett*,
984 F.2d 1402 (5th Cir. 1993) ........................................ 20

*United States v. Gentry*,
941 F.3d 767 (5th Cir. 2019) .............................. 2, 43, 44

*United States v. Hamm*,
___ F.3d ___, 2020 WL 1071040 (6th Cir. March 6, 2020) .............. 48

*United States v. Hassan*,
578 F.3d 108 (2d Cir. 2008) .......................................... 31

*United States v. Heredia*,
483 F.3d 913 (9th Cir. 2007) ......................................... 18

*United States v. Hillman*,
461 F.2d 1081 (1972) ................................................. 25

*United States v. Hubbard*,
96 F.3d 1223 (9th Cir. 1996) ......................................... 38

*United States v. Jauregui*,
918 F.3d 1050 (9th Cir. 2019) ........................................ 17

*United States v. Jefferson*,
791 F.3d 1013 (9th Cir. 2015) ............................. *passim*

*United States v. Jewell*,
532 F.2d 697 (9th Cir. 1976) ......................................... 24

*United States v. Karr*,
742 F.2d 493 (9th Cir. 1984) ......................................... 41

*United States v. Lopez-Martinez,*
  725 F.2d 471 (9th Cir. 1984) .......................................... 23, 25, 26, 27

*United States v. Mobley,*
  803 F.3d 1105 (9th Cir. 2015) .......................................... 34

*United States v. R.L.C.,*
  503 U.S. 291 (1992) .......................................... 19

*United States v. Ramirez-Ramirez,*
  875 F.2d 772 (9th Cir. 1989) .......................................... 27

*United States v. Rea,*
  532 F.2d 147 (9th Cir. 1976) .......................................... 24

*United States v. Reed,*
  721 F.2d 1059 (6th Cir. 1983) .......................................... 34

*United States v. Salazar,*
  5 F.3d 445 (1993) .......................................... 27

*United States v. Thomas,*
  887 F.2d 1341 (9th Cir. 1989) .......................................... 40

*United States v. U.S. Gypsum Co.,*
  438 U.S. 422 (1978) .......................................... 3, 6, 16

*United States v. Villanueva-Sotelo,*
  515 F.3d 1234 (D.C. Cir. 2008) .......................................... 10

*United States v. Whiltberger,*
  18 U.S. (5 Wheat.) 76 (1820) .......................................... 19

*Vosgien v. Persson,*
  742 F.3d 1131 (9th Cir. 2014) .......................................... 12

*Washington v. Glucksberg,*
  521 U.S. 702 (1997) .......................................... 20

## Federal Statutes

18 U.S.C. § 111 .......................................... 33

18 U.S.C. § 371 .......................................... 33

18 U.S.C. §§ 922 ................................................................. 13

18 U.S.C. § 924 ................................................................... 5

18 U.S.C. § 1028A .............................................................. 10

21 U.S.C. § 841 .......................................................... *passim*

21 U.S.C. § 846 .......................................................... *passim*

28 U.S.C. § 994 ................................................................. 45

## Other

1 Subst. Crim. L. § 5.2(c) ................................................. 18

2 Subst. Crim. L. § 13.3(a) ............................................... 49

Ann Hopkins, *Mens Rea and the Right to Trial by Jury*,
    76 Cal. L. Rev. 391, 397 (1988) ................................... 22

Anti-Drug Abuse Act of 1986,
    Pub. L. No. 99-570, 100 Stat. 3207 (1986) .................... 4

U.S.S.G. § 1B1.3 comment. (n.3)...................................... 48

UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

| | |
|---|---|
| UNITED STATES OF AMERICA, | U.S.C.A. Nos. 15-50509, 16-50048, 16-50117, 16-50195, 16-50345 |
| Plaintiff-Appellee, | |
| | U.S.D.C. No. 13CR4514-BEN |
| v. | |
| ROBERT COLLAZO, LINO DELGADO-VIDACA, JULIO RODRIGUEZ, STEVEN AMADOR, ISAAC BALLESTEROS, | **APPELLANTS' SUPPLEMENTAL BRIEF** |
| Defendant-Appellants. | |

## INTRODUCTION

Appellants submit this response to the three questions posed in the January 29, 2020 order. Appellants initially address the second question asking whether this *en banc* panel should adopt Judge W. Fletcher's concurrence in *United States v. Jefferson*, 791 F.3d 1013, 1019 (9th Cir. 2015), because the mens rea for the substantive 21 U.S.C. § 841 offense is a threshold question for determining conspiratorial liability under § 846. The panel should adopt Judge Fletcher's view that the mens rea in § 841(a) applies to the elements of drug type and quantity triggering the enhanced penalties in § 841(b), as his approach

is faithful to the presumption that a statute's mens rea applies to all of its elements, as clarified in *Flores-Figueroa v. United States*, 556 U.S. 646 (2009), and *Rehaif v. United States*, 139 S. Ct. 2191 (2019), and as cogently explained by Justice Kavanaugh in *United States v. Burwell*, 690 F.3d 500, 527-53 (D.C. Cir. 2012) (dissent).

Even if the statute's mens rea does not apply to drug type and quantity for a substantive violation under § 841, that does not resolve conspiratorial liability under § 846 because the "mens rea for conspiracy is distinct and more demanding." *United States v. Anderson*, 932 F.3d 344, 352 and n.23 (5th Cir. 2019) (citing *Ocasio v. United States*, 136 S. Ct. 1423, 1429 (2016)). The Supreme Court did not articulate a contrary view in *United States v. Feola*, 420 U.S. 671 (1975), an opinion that is limited to purely jurisdictional elements. As the Fifth Circuit did in *Anderson*, this Court should follow the age-old principles of conspiracy law explained in *Ocasio* and hold that the scope of a defendant's agreement must include drug type and quantity to trigger enhanced penalties under §§ 841(b) and 846.

This Court should also reject *United States v. Gentry*, 941 F.3d 767, 785-86, 794 (5th Cir. 2019), to the extent that it articulated a rule

permitting conspiratorial liability for drug type and quantity based on mere reasonable foreseeability. Such a rule undermines Congress's intent, as reflected in the language of the statute and the history of the interlocking statutory/Guidelines scheme. *See Dorsey v. United States*, 567 U.S. 260, 264-65 (2012). A mere reasonable foreseeability rule is also inconsistent with recent Supreme Court precedent, *See Honeycutt v. United States*, 137 S. Ct. 1626, 1631-32, 1634 (2017), and distorts *Pinkerton v. United States*, 328 U.S. 640, 647-48 (1946), liability.

## ARGUMENT

### I. *Jefferson*

"[I]t is a cardinal rule of the interpretation of criminal statutes that 'the existence of a *mens rea* is the rule of, rather than the exception to, the principles of Anglo-American criminal jurisprudence.'" *United States v. Jefferson*, 791 F.3d 1013, 1020 (9th Cir. 2015) (Fletcher, J., concurring) (quoting *United States v. U.S. Gypsum Co.*, 438 U.S. 422, 436 (1978)). Under this rule, § 841 (and analogous drug statutes) must be interpreted to require proof that the defendant knew drug type and

quantity, when those facts are elements triggering increased statutory sentencing ranges.

## A. Supreme Court precedent requires this interpretation.

### 1. A presumption of mens rea applies.

In the Anti-Drug Abuse Act of 1986, Congress amended the federal drug statutes to increase the maximum sentences and to provide an escalating series of mandatory minimums. *See* Pub. L. No. 99-570, 100 Stat. 3207 (1986). In an effort to ensure "the kingpins—the masterminds who are really running these operations"—serve a substantial prison term, Congress set a mandatory minimum of ten years for offenses involving specific amounts of specific types of drug, and to reach those "middle-level dealers as well," it set a mandatory minimum of five years for offenses involving lesser amounts. 132 Cong. Rec. 27, 193-94 (Sept. 30, 1986) (statement of Sen. Robert Byrd). Therefore, since 1986, drug type and quantity increase maximum terms from one year to life, and mandatory minimum terms from zero to ten years, and serve as the gateway for substantially higher mandatory minimum sentences for those with prior drug convictions.

For these aggravated drug offenses, two lines of Supreme Court precedent "dictate" that the mens rea apply to drug types and quantities. *United States v. Burwell*, 690 F.3d 500, 529 (D.C. Cir. 2012) (en banc) (Kavanaugh, J., dissenting);[1] *see also United States v. Dado*, 759 F.3d 550, 571-72 (6th Cir. 2014) (Merritt, J., dissenting). As Justice (then-Judge) Kavanaugh has explained, these twin lines of precedent hold that (1) "[t]he presumption of mens rea applies to each element of the offense," and (2) facts that increase the statutory range applicable to an offense are "elements" of the aggravated offenses. *Burwell*, 690 F.3d at 529 (dissent).

The "presumption of mens rea embodies deeply-rooted principles of law and justice" that "implicate[] 'fundamental and far-reaching' issues." *Id.* at 527 (quoting *Morissette v. United States*, 342 U.S. 246, 247 (1952)). The presumption "stands on bedrock historical foundation."

---

[1] In *Burwell*, the D.C. Circuit held that a person may be convicted of 18 U.S.C. § 924(c)(1)(B)(ii), and thus subjected to a 30-year mandatory minimum, for carrying a machinegun while committing certain crimes—even if he did not know the firearm was a machinegun. By contrast, this Court assumes § 924(c)(1)(B)(ii) requires the defendant to know the firearm is a machinegun. *United States v. Franklin*, 321 F.3d 1231, 1240 (9th Cir. 2003).

*Id.* at 531-32 (collecting common-law commentaries). The Supreme Court expressly adopted the presumption in a number of landmark cases. *See, e.g., Morissette*, 342 U.S. at 250; *U.S. Gypsum*, 438 U.S. at 436; *United States v. Bailey*, 444 U.S. 394 (1980); *Liparota v. United States*, 471 U.S. 419 (1985); *Poster 'N' Things, Ltd. v. United States*, 511 U.S. 513 (1994); *Staples v. United States*, 511 U.S. 600 (1994); *United State v. X-Citement Video, Inc.*, 513 U.S. 64 (1994). And it has invoked the presumption with increasing frequency in recent years. *See Rehaif*, 139 S. Ct. at 2195; *Torres v. Lynch*, 136 S. Ct. 1619, 1630 (2016); *Elonis v. United States*, 135 S. Ct. 2001, 2009 (2015); *McFadden v. United States*, 135 S. Ct. 2298, 2304 (2015);[2] *Flores-Figueroa*, 556 U.S. at 652.

As Justice Kavanaugh summarized in *Burwell*, the Supreme Court has applied the presumption "consistently, forcefully, and broadly." 690 F.3d at 537 (dissent). "The presumption applies to

---

[2] In *McFadden*, 135 S. Ct. at 2304, the Supreme Court held that § 841(a)(1) "requires a defendant to know only that a substance he is dealing with is some unspecified substance listed on the federal drug schedules." Appellants agree that a defendant may be convicted of § 841(a)(1) without knowledge of the particular identity of the controlled substance. *McFadden* neither involved nor discussed the aggravated offenses in § 841(b). *See Jefferson*, 791 F.3d at 1022 (Fletcher, J., concurring).

statutes that are silent as to mens rea . . . [and] also . . . to statutes that contain an explicit mens rea requirement for one element but are silent or ambiguous about mens rea for other elements." *Id.* Critically, "whether the statute is completely silent as to mens rea, or only partially silent, the presumption applies to *each element* of the offense." *Id.* (emphasis in original). Simply put, "[t]he Supreme Court has established and applied a rule of statutory interpretation for federal crimes: A requirement of mens rea applies to each element of the offense unless Congress has plainly indicated otherwise." *Id.*[3]

This brings us to the second line of precedent. It is now clear that, as facts that increase the statutory sentencing range, drug type and quantity are elements of distinct and aggravated offenses, not mere sentencing factors that the court may add to the core offense. *See, e.g., Jefferson*, 791 F.3d at 1016; *United States v. Cortes*, 757 F.3d 850, 863 (9th Cir. 2013). This is because "[w]hen a finding of fact alters the

---

[3] There are a few historical qualifications to the presumption, *Burwell*, 690 F.3d at 538 n.10, none of which apply here. The presumption does not generally apply to public welfare offenses with minor penalties, to jurisdiction-only elements, or to a few elements historically applied in a strict liability manner, such as the age of victim in statutory rape. *Id.*

legally prescribed punishment so as to aggravate it, the fact necessarily forms a constituent part of a new offense and must be submitted to the jury." *Alleyne v. United States*, 570 U.S. 99, 114-115 (2013); *See also Apprendi v. New Jersey*, 530 U.S. 466, 483 n.10, 490 (2000). In these circumstances, "the core crime and the fact triggering the [increased] sentence together constitute a new, aggravated crime, each element of which must be submitted to the jury." *Id*. at 113. The drug type and quantity necessary to trigger these enhanced penalties thus "constitute[] element[s] of a separate, aggravated offense." *Id*. at 115.[4]

This interpretation is also consistent with Congress's intent. As this Court recognized in *United States v. Buckland*, 289 F.3d 558, 565 (9th Cir. 2002) (en banc), neither the statutory language nor the legislative history demonstrates that Congress intended to treat drug

---

[4] *Alleyne* overruled *Harris v. United States*, 536 U.S. 445 (2002), which had held that facts that increase a minimum sentence for § 924(c) offenses were sentencing factors to be found by a judge. 570 U.S. at 111-16. Following *Harris*, and before *Alleyne*, the Supreme Court held that no mens rea requirement attached to these facts. *Dean*, 556 U.S. 568. In reaching this conclusion, the Court relied on *Harris*'s characterization of the facts as sentencing enhancements. *Dean*, 556 U.S. at 571-72, 576. As it is now clear that facts that increase the mandatory minimum sentence are elements of an aggravated offense, not mere sentencing factors, *Dean* is no longer good law.

types and quantities in § 841(b) as sentencing factors to be found by courts, rather than elements to be submitted to the jury. It explained that "the headings 'Unlawful Acts' and 'Penalties' that appear in the United States Code were not part of the legislation enacted by Congress" in 1970, and although "Congress has amended § 841 numerous times since, [it] has never opted to enact these headings into law." *Id.* "[G]iving effect to Congress's intent," this Court overruled its previous interpretation of § 841(b) as a mere penalty provision and held that drug type and quantity must be submitted to the jury. *Id.* at 568.

This Court's rationale in *Buckland* has been validated by *Alleyne*, which clarified that, when "the aggravating fact produce[s] a higher range," including a mandatory minimum, it "conclusively indicates that the fact is an element of a distinct and aggravated crime," and must therefore be submitted to the jury. 570 U.S. at 116. The drug types and quantities in § 841(b) are such elements of the aggravated drug offenses. *Jefferson*, 791 F.3d at 1016. Because drug type and quantity are elements of separate, aggravated offenses, and because the presumption of mens rea applies to each element of these offenses, the presumption of mens rea applies here. *Jefferson*, 791 F.3d at 1022

(Fletcher, J., concurring); *Dado*, 759 F.3d at 571-72 (Merritt, J., dissenting).

This Court has disregarded the presumption by assuming it applies only where necessary to avoid the "potential for the penalization of innocent conduct." *Jefferson*, 791 F.3d at 1018. But the Supreme Court has never held that avoiding criminalization of non-culpable conduct is the only reason for the presumption. As Justice Kavanaugh explained in *Burwell*, although "the Supreme Court has said that the presumption of mens rea is important when the defendant otherwise may have been innocent of any wrongdoing[,] . . . the Court has never cabined the presumption of mens rea to those circumstances." 690 F.3d at 543 (dissent); *See also United States v. Villanueva-Sotelo*, 515 F.3d 1234, 1242 (D.C. Cir. 2008) (same).

The Court's opinions in *Flores-Figueroa*, *Alleyne*, and *Rehaif* confirm that the presumption is not so cabined. *Flores-Figueroa* interpreted 18 U.S.C. § 1028A, which punishes someone who "knowingly transfers, possesses, or uses, without lawful authority, a means of identification of another person" while committing an enumerated predicate crime. The question was whether the government

had to prove that the defendant *knew* the identification belonged to a real person. Because the statute applied only to those who committed a predicate crime and who used the identity without lawful authority, proof the defendant knew the means of identification belonged to a real person was not necessary to avoid criminalizing apparently innocent conduct.

As Justice Kavanaugh recounted, "the Government tried to distinguish *Morissette*, *U.S. Gypsum*, *Liparota*, *Staples*, and *X-Citement Video* on the ground that those cases involved statutes that 'criminalize conduct that might reasonably be viewed as innocent or presumptively lawful in nature,'" and contended that the Court's mens rea precedents should be understood only in those terms. *Burwell*, 690 F.3d at 545 (dissent) (quoting Brief for United States at 42-43, 18, *Flores-Figueroa*, 2009 WL 191837 (2009)). "But the Supreme Court rejected those arguments wholesale," and the "government's submission garnered zero votes." *Id.* at 545, 529. Instead, the Supreme Court relied on the presumption of mens rea and explained that "courts ordinarily read a phrase in a criminal statute that introduces the elements of a crime with the word 'knowingly' as applying that word to each element."

*Flores-Figueroa*, 556 U.S. at 656. Justice Alito concurred, "I think it is fair to begin with a general presumption that the specified *mens rea* applies to all the elements of an offense." *Id.* at 660 (concurrence).

The Supreme Court reinforced this presumption—and why it reaches not just elements necessary to make conduct criminal but also facts that constitute elements of an aggravated crime—in *Alleyne*. In holding that facts that increase the mandatory minimum sentence for an offense are not mere penalty provisions to be found by a judge, but elements that must be proved to the jury, the court repeatedly described them as elements of a "new," "separate," "distinct," and "aggravated" crime. 570 U.S. at 113-16. Thus, even if a defendant is guilty of the lesser-included offense, absent proof of the fact triggering the new mandatory minimum sentence, he is in fact "innocent" of the aggravated crime. *Burrage*, 571 U.S. at 209-10; *Alleyne*, 570 U.S. at 113; *cf. Vosgien v. Persson*, 742 F.3d 1131, 1135 (9th Cir. 2014) (explaining in habeas context that actual innocence of a crime does not mean actual innocence of any criminal wrongdoing, but actual innocence of the count of conviction).

Nor did *Rehaif* cabin the presumption. To the contrary, *Rehaif* cited *Flores-Figueroa*, 556 U.S. at 650, for the general rule that "we normally read the statutory term 'knowingly' as applying to *all* the subsequently listed elements of the crime." 139 S. Ct. at 2196 (emphasis added). It applied this rule despite the fact that the elements of the offense and the mens rea requirement were set forth in completely separate statutes (18 U.S.C. §§ 922(g) and 924(a)(2), respectively). And it relied on the Model Penal Code ("MPC"), which provides that "when a statute 'prescribes the kind of culpability that is sufficient for the commission of an offense, without distinguishing among the material elements thereof, such provision shall apply to *all* the material elements of the offense, unless a contrary purpose plainly appears.'" *Rehaif*, 139 S. Ct. at 2195 (quoting MPC § 2.02) (emphasis added). In applying the presumption to interpret § 922, the Court overruled the unanimous contrary view of the circuits.

"In sum, under Supreme Court precedent, the presumption of mens rea applies to each element of the offense, not just when necessary to avoid criminalizing apparently innocent conduct." *Burwell*, 690 F.3d at 546 (dissent). Therefore, the presumption applies to drug type and

quantity that increase the statutory sentencing range for a federal drug offense.

## 2. The presumption is not rebutted.

The text and structure of the drug statutes do not rebut the presumption. Moreover, two aspects of the aggravated drug offenses strongly reinforce it: (1) the severity of the sentences for those offenses, and (2) the significant risk of reasonable, genuine belief on the part of defendants, especially low-level drug couriers, regarding drug type and quantity.

As explained, the headings "Unlawful Acts," and "Penalties" that appear in the U.S. Code were not enacted by Congress, and thus "the 'look' of this statute is not a reliable guide to congressional intentions." *Buckland*, 289 F.3d at 565 (citing *Jones v. United States*, 526 U.S. 227, 233 (1999)). It's true that § 841(b) is silent regarding mens rea. "But as the Supreme Court has explained again and again, 'mere omission from the statute of any mention of intent will not be construed as eliminating that element from the crimes denounced.'" *Burwell*, 690 F.3d at 549 (dissent) (quoting *Bailey*, 444 U.S. at 406 n.6 (quoting *Morissette*, 342 U.S. at 263)). "To state the obvious: If the presumption of mens rea were

overcome by statutory silence, it would not be much of a presumption." *Id.*

Nor does the inclusion of an express mens rea in § 841(a) rebut the presumption. To the contrary, the Supreme Court has applied the presumption, and held it to be unrebutted, to statutes like § 841 that contain an explicit mens rea requirement for one element but are silent or ambiguous about mens rea for other elements. *Id.* at 549-50 (collecting cases). The Supreme Court "ordinarily read[s] a phrase in a criminal statute that introduces the elements of a crime with the word 'knowingly' as applying to each element.'" *Rehaif*, 139 S. Ct. at 2196 (quoting *Flores-Figueroa*, 556 U.S. at 652). Here, the statute introduces the elements of the aggravated drug offenses—some of which are set forth in § 841(a) (and are common with the core offense) and some in § 841(b)—with the words "knowingly or intentionally." This mens rea is therefore presumed to apply to each element of the aggravated drug offenses.

The severe penalties for the aggravated drug offenses reinforce the presumption of mens rea. *Cf. Burwell*, 690 F.3d at 526 (Rogers, J., dissenting); *id.* at 547 (Kavanaugh, J., dissenting). The Supreme Court

has repeatedly stated that "the penalty imposed under a statute has been a significant consideration in determining whether the statutes should be construed as dispensing with *mens rea*," *Staples*, 511 U.S. at 616, and has described maximum terms of ten, three, and even one years' imprisonment as "harsh," "severe," and "high," *id.* at 618; *X-Citement Video*, 513 U.S. at 72; *U.S. Gypsum*, 438 U.S. at 442 n.18; *Morissette*, 342 U.S. at 248 & n.2, 260. Here, the penalties involved are potential life sentences and ten-year *minimum* terms, which in turn serve as gateways to even greater *minimum* terms of 15 and 25 years. 21 U.S.C. § 841(b)(1). As Judge Merritt noted dissenting in *Dado*, permitting punishment for the aggravated drug offenses without a mens rea "disregards the presumption that the more serious the penalty at issue, the more important intent is to guilt." *Dado*, 759 F.3d at 572 (citing *Staples*, 511 U.S. at 616). Congress set dramatically higher minimum terms for kingpins and mid-level traffickers. Applying those mandatory minimums to low-level traffickers who do not know the type and quantity of drugs divorces moral culpability from the penalty. *Id.*

Moreover, individuals may "genuinely and reasonably believe" their offense was only the lesser-included core drug offense. *Cf. Burwell*,

690 F.3d at 548 (Kavanaugh. J., dissenting) (citing *Staples*, 511 U.S. at 615). This "opportunity for reasonable mistake" also supports requiring proof of mens rea. *X-Citement Video*, 513 U.S. at 72 n.2. For example, *Jefferson* involved a drug courier who thought he was transporting marijuana when it was actually methamphetamine. 791 F.3d at 101; *see also United States v. Jauregui*, 918 F.3d 1050, 1053-55 (9th Cir. 2019) (similar facts). A mens rea requirement is necessary to ensure just, fair punishment for such defendants.

The government may contend that the presumption is rebutted because requiring mens rea as to drug type and quantity will create too difficult a burden for the prosecution. The Supreme Court has repeatedly rejected this complaint, often noting that the burden constructed by the government is exaggerated and that "if Congress thinks it necessary to reduce the Government's burden at trial to ensure proper enforcement of the Act, it remains free to amend [the statute] by explicitly eliminating a mens rea requirement." *Staples*, 511 U.S. at 615 n.11; *see also Flores-Figueroa*, 556 U.S. at 655-56; *Liparota*, 471 U.S. at 434 & n.17. The same is true here.

Most defendants know the type and quantity of drugs they are dealing, and it will not be particularly burdensome for the government to prove this. The one notable exception is the low-level courier, who may not know what he is carrying. But, even as to him, the government has a powerful weapon in its arsenal – the *Jewell* instruction. In appropriate cases, the government will be able to argue that the courier had the requisite mens rea to trigger the enhanced penalties because he deliberately avoided knowledge of drug type and quantity. *See United States v. Heredia*, 483 F.3d 913 (9th Cir. 2007) (en banc). Furthermore, under the doctrine of transferred intent, *see* 1 Subst. Crim. L. § 5.2(c) (3d ed.), a courier who successfully argues that he believed he was transporting a small quantity of most common street drugs rather than an amount triggering § 841(b)(1)(A) or (B) will still often be subject to a maximum of 20 years, *see* 21 U.S.C. § 841(b)(1)(C), thereby giving the government ample room to request a heavy sentence.

In sum, the presumption of mens rea is not overcome, and the relevant textual and contextual considerations reinforce a mens rea requirement.

### 3. The rule of lenity and doctrine of constitutional avoidance also support this interpretation.

Under the rule of lenity, ambiguities about the breadth of a criminal statute are to be resolved in the defendant's favor. *United States v. Davis*, 139 S. Ct. 2319, 2333 (2019). "[F]ounded on 'the tenderness of the law for the rights of individuals' to fair notice of the law 'and on the plain principle that the power of punishment is vested in the legislative, not in the judicial department'," *id.* (quoting *United States v. Whiltberger*, 18 U.S. (5 Wheat.) 76, 95 (1820)), the rule of lenity applies not only to the substantive scope of criminal statutes, but also to the severity of sentencing. *United States v. R.L.C.*, 503 U.S. 291, 305 (1992) (citing *Bifulco v. United States*, 447 U.S. 381, 387 (1980)). To the extent the drug statutes are ambiguous as to the mens rea needed to trigger the aggravated offenses, "the Court will not interpret a federal criminal statute so as to increase the penalty that it places on such an individual when such an interpretation can be based on no more than a guess as to what Congress intended." *Ladner v. United States*, 358 U.S. 169, 178 (1958).

Likewise, the doctrine of constitutional avoidance or doubt also supports appellants' construction of the statute. *See, e.g., Jones v.*

*United States,* 526 U.S. 227, 239-40 (1999). Imposition of an extraordinary sentence based on a material element that does not require a mens rea is impermissible under the Due Process Clause of the Fifth Amendment.

While Congress has significant latitude "to declare an offense and to exclude elements of knowledge and diligence from its definition," it remains true that "due process places some limits on [Congress's] exercise." *Lambert v. California*, 355 U.S. 225, 228 (1957); *See also United States v. Garrett*, 984 F.2d 1402, 1409 n.15 (5th Cir. 1993) ("The Supreme Court has indicated that, under some circumstances, the imposition of criminal liability without mens rea violates due process."). The Due Process Clause "protects those fundamental rights and liberties, which are, objectively, 'deeply rooted in this Nation's history and tradition.'" *Washington v. Glucksberg*, 521 U.S. 702, 720-21 (1997). The requirement of an "evil-meaning mind with an evil-doing hand . . . took deep and early root in American soil." *Morissette*, 342 U.S. at 252. Indeed, it is as "universal and persistent in mature systems of law as belief in freedom of the human will and a consequent ability and duty of the normal individual to choose between good and evil." *Id.* at 250.

An essential component of that "legal (and indeed, moral) choice" is knowledge of the full stakes of the venture; one is not culpable solely based on the anterior choice to break *a* law. *Rosemond v. United States*, 572 U.S. 65, 78 (2014). In the aiding-and-abetting context, "[a]n intent to advance some different or lesser offense is not, at least not usually, sufficient: Instead, the intent must go to the specific and entire crime charged—so here, to the full scope" of the crime. *Id.* at 76. This principle applies equally to principal liability. As a due process matter, then, there should be little distinction between the defendant "who is unaware of the facts that make his conduct criminal and a defendant who is unaware of the magnitude of the wrong he is doing." *Burwell*, 690 F.3d at 543 (Kavanaugh, J., dissenting) (quotations omitted)). To say that "'the mistake by the defendant may be disregarded because of the fact that he actually intended to do some legal or moral wrong' is—in Professor LaFave's words—'unsound, and has no place in a rational system of substantive criminal law.'" *Id.* at 543.

A contrary reading is questionable under the Sixth Amendment as well, because, "when the Constitution was ratified and the Sixth Amendment adopted, 'part of what was guaranteed to criminal

defendants was the right to have a jury decide whether they were morally blameworthy.'" *Id.* at 533 n.7 (citing Ann Hopkins, *Mens Rea and the Right to Trial by Jury*, 76 Cal. L. Rev. 391, 397 (1988)). The jurors' power to modulate the verdict to match their view of moral culpability of the defendant was well established. *See Jones*, 526 U.S. at 245. Assigning harsh mandatory minimum and increased maximum sentences without regard to the evil the defendant intended is thus questionable on Sixth Amendment grounds.

In sum, if the Court rejects a mens rea for the aggravated drug offenses as a matter of statutory interpretation, it will have to "open up an entire new body of constitutional mens rea law." *Burwell*, 690 F.3d at 551 (Kavanaugh, J., dissenting).

## B.  This Court should not continue to follow the line of cases cited by the lead opinion in *Jefferson*.

Sitting *en banc*, this Court has an opportunity to return to first principles in determining whether § 841 permits an individual's statutory sentencing range to increase from a one-year maximum, § 841(b)(3), to a ten-year minimum, § 841(b)(1)(A), based on facts he does not even know. Although this Court has long rejected a mens rea requirement for aggravated drug offenses, it has done so by adhering to

earlier precedents that interpreted materially different drug statutes, frequently in cases that did not present the question at issue here, without any discussion of the mens rea presumption, and until very recently against a starkly different constitutional backdrop. This Court should decline to follow them. *See United States v. Games-Perez*, 695 F.3d 1104, 1124 (10th Cir. 2012) (Gorsuch, J., dissenting from denial of rehearing en banc) ("[I]t is surely uncontroversial to suggest that the point of the en banc process, the very reason for its existence, is to correct grave errors in panel precedents when they become apparent, even if the panel precedents in question happen to be old or involve questions of statutory or regulatory interpretation.").

In *Jefferson*, this Court cited cases ranging from 1976 to 2002 to show that it had consistently held a defendant can be convicted under § 960(a) if he believed he imported *some* controlled substance, and the government is not required to prove he knew the type or quantity for the penalties in § 960(b) to apply. 791 F.3d at 1015-16. Of those cases, however, only one—*United States v. Lopez-Martinez*, 725 F.2d 471 (9th Cir. 1984)— seriously considered whether the application of an increased penalty might require the government to prove the defendant

knew the fact that triggers the increased penalty, but did so without the benefit of *Apprendi* or consideration of the mens rea presumption. Instead, *Lopez-Martinez* erroneously relied on a line of inapposite cases: *United States v. Rea*, 532 F.2d 147 (9th Cir. 1976); *United States v. Jewell*, 532 F.2d 697 (9th Cir. 1976) (en banc); and *United States v. Davis*, 501 F.2d 1344 (9th Cir. 1974).

*Davis* was an early interpretation of the drug statutes enacted by the Comprehensive Drug Abuse Prevention Act of 1970, the first version of § 841. That statute set forth different maximum penalties for different types of drugs. Pub. L. 910513, Title II, § 401, Oct. 27, 1970, 84 Stat. 1260. But it did not contain any mandatory minimum penalties and it punished all schedule I non-narcotics the same: a maximum of 5 years. *Id.* One question presented in *Davis* was whether the district court erred in instructing the jury it could convict if the defendant thought he was distributing psilocybin, one schedule I non-narcotic, even though it was actually LSD, a different schedule I non-narcotic. *Davis*, 501 F.2d at 1346. This Court held the government was not required to prove the defendant knew the exact nature of the substance with which he was dealing. *Id.* Because the sentencing range for both

schedule I non-narcotic substances was the same, there was no cause for this Court to consider whether knowledge of drug type was required to trigger a higher sentencing range.[5]

Next in the line are *Jewell* and *Rea*. *Jewell* limited *Davis* by explaining the government must prove at least that the defendant knew he was dealing with a controlled substance, but did not present the question whether mens rea would be required for drug type and quantity when they increase the statutory sentencing range. *Jewell*, 532 F.2d at 698. And *Rea*, 532 F.2d at 148-49, simply followed *Jewell*.

The first case cited in *Jefferson* that even considered the possibility that an increased statutory sentence might require the government to prove the defendant knew his offense involved the more serious drug is *Lopez-Martinez*, 725 F.2d 471. The Court ultimately

---

[5] In reaching its conclusion that the defendant did not need to know the nature of the substance—perhaps even that it was a controlled substance at all—this Court cited *United States v. Balint*, 285 U.S. 250, 254 (1922), and *United States v. Hillman*, 461 F.2d 1081, 1082 (9th Cir. 1972), without explanation. But *Balint* and *Hillman* interpreted taxing and regulatory statutes, which purportedly fell within the exception to the presumption of mens rea for public welfare offenses with minimal criminal consequence. *See* fn.3, *supra*.

concluded it did not, but its mode of analysis is incompatible with *Apprendi*, *Alleyne*, *Flores-Figueroa*, *Rehaif*, and, indeed, *Buckland.*

The issue in *Lopez-Martinez* involved whether the indictment was constructively amended when the jury was instructed it could convict the defendant for importing and possessing heroin, as alleged in the indictment, if the government proved he knew he had a controlled substance, even if he thought it was marijuana. Although the case did not involve the imposition of a mandatory minimum sentence triggered by a more serious drug, this Court acknowledged that the type of drug increased the potential maximum sentence—the statutory maximum for narcotic drugs was 15 years, whereas the maximum for non-narcotic drugs was 5 years—which "len[t] some color" to the argument. *Id.* at 475. But it ultimately concluded that *Davis, Jewell*, and *Rea* "establish[ed] the law of this Circuit." *Id.* This Court acknowledged none of those cases involved the possession of a narcotic and a claim by the defendant that he thought he possessed a non-narcotic and, thus, that they were not "precisely in point." *Id.* But it held that the principle of *Davis, Jewell,* and *Rea* applied because, "[u]nder the statute, the violation is importing or possession a controlled substance." *Id.* "The

difference between narcotic and non-narcotic controlled substances is material only as to the applicable penalty." *Id.*

Every aspect of *Lopez-Martinez* has been abrogated. It placed significant emphasis on the "framework" of the statutes, and noted that subsections (a) are labeled "unlawful acts," whereas subsections (b) were labeled "penalties." *Id.* at 473-74. But, as this Court sitting *en banc* has explained, these headings were not enacted by Congress. *Buckland*, 289 F.3d at 565. *Lopez-Martinez* also held that the violation was the importation or possession of a controlled substance, whereas the identity of the substance was relevant only to penalty – in other words, that the drug type is a mere sentencing factor. This analysis was rejected by *Apprendi* and *Alleyne*. Finally, *Lopez-Martinez* makes no reference to the presumption of mens rea set forth in the Supreme Court's decisions in *Morissette*, *U.S. Gypsum*, or *Bailey*, which all preceded it, and of course could not have taken into account the numerous mens rea decisions that followed it. Thus, *Lopez-Martinez* offers no cause for loyalty. Nor do the post-*Lopez-Martinez* cases cited in *Jefferson*—*United States v. Ramirez-Ramirez*, 875 F.2d 772, 773-74 (9th Cir. 1989), *United States v. Salazar*, 5 F.3d 445, 446-47 (9th Cir.1993),

and *United States v. Carranza*, 289 F.3d 634, 644 (9th Cir. 2002)—
which uncritically followed *Lopez-Martinez*.

Which brings us to *Jefferson*'s holding that neither *Alleyne* nor
*Flores-Figueroa* directly abrogated this Court's long-established
precedent. 791 F.3d at 1015-16 & n.2. This Court expressly declined to
consider the strength of defendant's arguments regarding other long-
established principles of statutory construction, noting that it could not
reconsider its precedent or depart from its reasoning absent
"intervening higher authority" that was "clearly irreconcilable" with its
prior decisions. *Jefferson*, 791 F.3d at 1018 n.6.[6]

This *en banc* panel does not face the same restrictions the panel in
*Jefferson* did. It is "higher authority." This *en banc* panel need not and

---

[6] The other circuits have generally engaged in a similar analysis,
simply following their older precedent without critically considering the
developments in the Supreme Court's constitutional and statutory-
construction jurisprudence. The only post-*Alleyne* opinion that arguably
engages in a critical analysis is the Sixth Circuit's decision in *Dado*,
where the question was reviewed only for plain error and resulted in a
split opinion with Judge Merritt dissenting. *See Dado*, 759 F.3d at 569-
73. The majority in *Dado* did not address *any* of the Supreme Court's
mens rea cases, and it specifically declined to address whether a strict-
liability interpretation of § 841(b) "can survive a due process challenge."
*Id.* at 571. As far as appellants are aware, no circuit has addressed the
question post-*Rehaif*.

should not continue to adhere to a line of precedent that originated in inapposite interpretations of materially different statutes against an outmoded constitutional backdrop. As it did in *Buckland*, this Court should reject its previous interpretation of the aggravated drug statutes as inconsistent with current Supreme Court precedents and hold that the statutes require the government to prove the defendant knew the drug type and quantity when they increase his statutory exposure.

## II.   *Feola*

At a minimum, this Court should hold that traditional principles of conspiracy law require a conspirator to have the specific intent as to drug type and quantity to commit an aggravated drug offense under §§ 841(b) and 846. Such an intent is consistent with the "longstanding" principle that a defendant must "reach an agreement with the 'specific intent that the underlying crime *be committed*' by some member of the conspiracy." *Ocasio v. United States*, 136 S. Ct. 1423, 1429 (2016) (quoting 2 K. O'Malley, J. Grenig, & W. Lee, Federal Jury Practice and Instructions: Criminal § 31:03, p. 225 (6th ed. 2008)). This conclusion is also consistent with the Fifth Circuit's recent treatment of *Ocasio. See United States v. Anderson*, 932 F.3d 344, 352 & n.23 (5th Cir. 2019).

The Supreme Court's earlier opinion in *United States v. Feola*, 420 U.S. 671, 677 n.9 (1975), merely sets forth a narrow exception for elements that are "jurisdictional only." Even if *Feola* has any application beyond jurisdictional elements, it does not apply to §§ 841(b) and 846, which set forth a series of dramatically aggravated felony offenses that depend on the type and amount of drugs.

### A. Conspiracy under *Ocasio* requires specific intent that "some conspirator commit each element of the substantive offense."

Subsequent to *Feola*, the Supreme Court has explained that "the fundamental characteristic of a conspiracy is a joint commitment to 'an endeavor which, if completed, would satisfy *all* of the elements of [the underlying substantive] criminal offense.'" *Ocasio*, 136 S. Ct. at 1429 (quoting *Salinas v. United States*, 522 U.S. 52, 65 (1997)) (citations omitted; emphasis added). Each defendant must therefore "reach an agreement with the specific intent that the underlying crime be committed by some member of the conspiracy." *Id.* (quotations and citation omitted). Put simply, "each conspirator must have specifically intended that *some conspirator* commit each element of the substantive offense." *Id.* at 1432.

That specific intent is what is necessary to show that the conspirators shared a "common criminal objective." *Id.* at 1434. The dissent agreed with these principles. *See id.* at 1442 (Sotomayor, J., dissenting) ("A defendant is guilty of conspiracy only if he agrees that the conspiratorial group intends to commit all the elements of the criminal offense."). This Court and other circuits have described the elements of conspiracy in similar terms. *See, e.g., United States v. Espinoza-Valdez,* 889 F.3d 654 (9th Cir. 2018) ("The elements of conspiracy are: (1) an agreement to accomplish an illegal objective, and (2) the intent to commit the underlying offense.") (quotations and citations omitted); *United States v. Hassan*, 578 F.3d 108, 123 (2d Cir. 2008) ("[A] conspiracy conviction cannot be sustained unless the government established beyond a reasonable doubt that the defendant had the specific intent to violate the substantive statute.").

Applying these principles, the Fifth Circuit has recently held that a conspiracy conviction requires a more demanding mens rea than the substantive offense. *See Anderson*, 932 F.3d at 352 & n.23. In *Anderson*, the substantive offense had an element of possession of extortion proceeds, but a mens rea element of only "knowledge that the monies

were unlawfully obtained." *Id*. at 352. Following *Ocasio*, the Fifth Circuit held that conspiracy to commit the offense "would require proof of Anderson's specific intent that at least one of his co-conspirators possess extortion proceeds and do so with knowledge that the money was unlawfully obtained." *Id*. In other words, *Anderson* required a conspirator to have a specific intent regarding the extortion proceeds element, even though the substantive offense required only knowledge that the money was unlawfully obtained. That result is compelled by the fact that the "mens rea for conspiracy is distinct and more demanding." *Id*.

Consistent with *Ocasio* and *Anderson*, this Court should apply these fundamental principles of conspiracy law to §§ 841(b) and 846. Just as the statute in *Anderson* had an element of possessing extortion proceeds, each aggravated substantive drug offense under § 841(b) has elements of dealing in specific drug types and quantities. *See Jefferson*, 791 F.3d at 1016. The "distinct and more demanding" mens rea for conspiracy, *Anderson*, 932 F.3d at 352, requires a specific intent that a coconspirator deal in these elements, even if the substantive offense

required a different mens rea. The Supreme Court's earlier opinion in *Feola* does not undermine this conclusion.

## B.  *Feola* is limited to jurisdictional elements.

The specific issue in *Feola* was whether the government had to prove a defendant charged under the general conspiracy statute (18 U.S.C. § 371) with conspiracy to assault a federal officer (under 18 U.S.C. § 111) had knowledge "of the facts giving rise to federal jurisdiction", i.e., that his intended victim was a federal officer. *Feola*, 420 U.S. at 672-73, 696. *Feola*'s ultimate holding is that "where knowledge of the facts giving rise to federal jurisdiction is not necessary for conviction of a substantive offense embodying a mens rea requirement, such knowledge is equally irrelevant to questions of responsibility for conspiracy to commit that offense." *Id.* at 696.

In other words, the government does not need to prove a defendant knew he was agreeing to violate federal law in order to convict him of a conspiracy to commit a federal offense as long as that offense does not itself have an "'antifederal' knowledge requirement."

*Id.* at 693;[7] *See also United States v. Mobley, 803 F.3d* 1105, 1109 (9th Cir. 2015) (citing *Feola* for the "general rule" that "if knowledge of a fact necessary to establish federal jurisdiction is not required for the substantive offense, then it is not required under § 371 for a conspiracy to commit that offense either"); *United States v. Reed*, 721 F.2d 1059, 1061 (6th Cir. 1983) ("*Feola* establishes a general principle that in proving the content of the conspiracy agreement the government need not prove a higher degree of criminal intent or scienter respecting the jurisdictional element than is necessary for the substantive offense itself.").

To reach this rule, *Feola* focused on the undisputed fact that, for the offense of assault on a federal officer, the victim's identity as a federal officer was "jurisdictional only." *Feola*, 420 U.S. at 677 n.9; *see also id.* at 697-99 (Stewart, J., dissenting) (explaining the majority's holding depended on the conclusion that the federal-officer requirement was "jurisdictional only," as opposed to an "aggravated assault statute,

---

[7] If the substantive offense did have an antifederal knowledge requirement, the conspiracy offense would as well given *Feola*'s holding that the conspiracy offense cannot have a lesser mens rea requirement than the substantive offense. 420 U.S. at 695.

requiring proof of scienter"). The Court identified the question as "whether the acts contemplated by the conspirators are to be deemed legally different from those actually performed" solely because of that jurisdictional fact. *Id.* at 692. "Put another way," the Supreme Court asked whether the fact in question "alter[ed] the legal character of the acts agreed to," or was "no more germane to the nature of those acts than the color of the victim's hair[.]" *Id.*

To answer these questions, the Court turned to the values served by conspiracy law. The Court concluded: "That individuals know that their planned joint venture violates federal as well as state law seems totally irrelevant to that purpose of conspiracy law which seeks to protect society from the dangers of concerted criminal activity." *Id.* The Court also "fail[ed] to see how the agreement is any less blameworthy or constitutes less of a danger to society solely because the participants are unaware which body of law they intend to violate." *Id.* Put differently, "[t]he concept of criminal intent does not extend so far as to require that the actor understand not only the nature of his act but also its consequence for the choice of a judicial forum." *Id.* at 685.

Based on this reasoning, the Court concluded "that knowledge of the official identity of the victim is irrelevant to the essential nature of the agreement, entrance into which is made criminal by the law of conspiracy." *Id.* at 695. The purely jurisdictional fact in *Feola* did not need to be known by the defendant for him to be convicted of the conspiracy offense—it was not a germane fact because the agreement was "no less dangerous" and not "any less blameworthy" without knowledge of that fact. *Id.* at 694.

**C.    Unlike purely jurisdictional elements, drug type and quantity elements are germane—they create aggravated offenses.**

The corollary to *Feola*'s reasoning is that an element making an agreement more dangerous or more blameworthy is germane. When it comes to drug conspiracies, Congress has already made that determination by "ramp[ing] up the punishment for controlled substance offenders based on the type and amount of illegal substance involved in the crime." *Buckland*, 289 F.3d at 568. These facts accordingly create aggravated offenses under *Alleyne* and *Apprendi*.

The enhanced penalties reflect Congress's determination that some drug types and quantities are more blameworthy or more

dangerous to society. Based on the analysis in *Feola*, that, in turn, means that drug type and quantity are germane facts that "alter the legal character of the acts agreed to." *Feola*, 420 U.S. at 693. And that means they do not fall under *Feola*'s limited exception to the general fundamental rule (explained in *Ocasio*) that a conspirator must specifically intend the facts that establish each element of the substantive offense that is the object of the conspiracy.

Unlike in *Feola* where the agreement to commit the crime was no less dangerous or blameworthy because a conspirator did not know he was violating federal law, an agreement to commit a crime involving a lesser-punished drug type or quantity, such as one kilogram of marijuana (triggering a five-year maximum), would be less blameworthy than an agreement to distribute fifteen kilograms of methamphetamine (triggering a ten-year minimum). The two agreements present different dangers to society and different levels of blameworthiness, requiring a mens rea to be assigned to the distinguishing fact. In sum, even if *Feola* could be interpreted to reach beyond jurisdictional elements, its reasoning is inapplicable to aggravated drug offenses under §§ 841(b) and 846.

**D.    This Court has not extended *Feola* to this context.**

This Court has at times cited *Feola* for the proposition that "a federal conspiracy conviction does not require a greater level of criminal intent than a conviction on the substantive count." *United States v. Hubbard*, 96 F.3d 1223, 1229 (9th Cir. 1996); *see also United States v. Baker*, 63 F.3d 1478, 1491 n.16, 1493 (9th Cir. 1995) (stating "[n]o greater or different intent is necessary" to convict for a conspiracy to commit an offense than for the offense itself, but not citing *Feola* for this assertion). These statements, placed in context, have not expanded *Feola* beyond jurisdictional elements. Nor could they, because, as explained below, *Feola* itself recognized that a conspiracy conviction may require a more demanding intent than the substantive offense.

While cases like *Hubbard* and *Baker* are not binding on this *en banc* panel, they are also not substantively controlling. In *Hubbard*, 96 F.3d at 1229, this Court held that knowledge that the mails would be used was not necessary to establish a conspiracy to commit mail fraud. The conclusion in *Hubbard* may actually conflict with *Stokes v. United States*, 157 U.S. 187, 188-89 (1895), a Supreme Court case that it did not address, but, in any event, the use of the mails is a jurisdictional

element. *See Neder v. United States*, 527 U.S. 1, 20 (1999); *Torres v. Lynch*, 136 S. Ct. 1619, 1631 (2016). Thus, an expansion of *Feola* was not under consideration.

In *Baker*, this Court relied on *Feola* to reject the defendants' argument that "the government was required to prove their intent to violate *federal* law." *Baker*, 63 F.3d at 1491 n.16. Citing *Feola*, this Court held, "[k]nowledge of the federal nature of an offense is not an essential element of the crime of conspiracy to commit that offense." *Id.* at 1491 n.16. As such, *Baker* limited its discussion of *Feola* to the context of federal jurisdiction.

Without a citation to *Feola*, however, *Baker* also stated: "Establishing a defendant's guilt of conspiracy to commit a substantive crime requires proof of the mens rea essential for conviction of the substantive offense itself. No greater or different intent is necessary." *Id.* at 1493 (citations omitted). But these statements were made to reject an argument that "intent to violate the law is an essential element of the crime of conspiracy[,]" *id.*, where the substantive offense contained a "knowingly" and not a "willfully" mens rea element. *Id.* at 1491.

In other words, the defendants in *Baker* wanted something more than what traditional conspiracy principles provide. They were not satisfied with the rule that a defendant must have a specific intent that a conspirator commit each element of the offense. Instead, they wanted an additional element that a defendant must also have intended to violate the law; in essence, they wanted the "*Powell* doctrine," a view of conspiracy that the Supreme Court doubted in *Feola*, 420 U.S. at 691 and n.25. This Court's rejection of this argument has no bearing on appellants' claim that traditional conspiracy law requires conspirators charged under §§ 841(b) and 846 to have the specific intent that some member of the conspiracy commit each element of an aggravated drug offense.

Like *Hubbard* and *Baker*, this Court used seemingly broad language when discussing *Feola* in *United States v. Thomas*, 887 F.2d 1341 (9th Cir. 1989), but that case is also distinguishable in several respects. In *Thomas*, this Court relied on *Feola* to conclude that a conspiracy to commit a Lacey Act violation did not require elevating the negligence-type mens rea required for the substantive offense. *Id.* at 1346-47. But the mens rea element at issue concerned the defendant's

knowledge of whether his conduct violated the law, and therefore, like *Baker*, the defendant was essentially advocating for the "*Powell* doctrine." Furthermore, the conspiratorial violation in *Thomas* was a *misdemeanor* falling under the public-welfare exception for offenses with minor penalties, and thus a negligence mens rea was permissible when considering the "policies behind the imposition of conspiratorial liability" in that specific context. *Feola*, 420 U.S. at 693.

While *Thomas* is distinguishable, it also took a leap in characterizing this Court's prior *Feola* precedent. The panel in *Thomas* recognized that *Feola* expressly declined to consider what mens rea would be required for a conspiracy to commit a strict liability offense. *Feola*, 420 U.S. at 691. But the *Thomas* panel declared that this Court had resolved a similar question in *Karr*, 742 F.2d at 497, an opinion that, in one sentence, rejected a defendant's sufficiency claim and did not even cite *Feola* or discuss the standard for conspiratorial liability. Notably, neither *Thomas* nor *Karr* had the benefit of the Supreme Court's decision in *Ocasio*, which came several decades later. In short, *Thomas* is distinguishable in several respects, and its reliance on *Karr* renders it suspect as a source for determining the correct scope of *Feola*.

Instead, this *en banc* panel should follow the Fifth Circuit's recent opinion in *Anderson*, 932 F.3d at 352, which relied on *Ocasio* and is also consistent with the specific language in *Feola* itself. *Feola* stated that "in order to sustain a judgment of conviction on a charge of conspiracy to violate a federal statute, the Government must prove *at least* the degree of criminal intent necessary for the substantive offense itself." *Feola*, 420 U.S. at 692 (emphasis added). Thus, the mens rea for the object of a conspiracy sets only a floor for the mens rea for a conspiratorial violation. It is therefore consistent with *Feola* for a conspiracy offense to require proof of specific intent that a coconspirator commit each element of a substantive offense, even if the substantive offense does not have that mens rea.

In sum, this Court's *Feola* precedent does not dictate that, in this context of aggravated drug offenses, the mens rea for conspiracy must be the same as the mens rea for the substantive offense. Even if loose language used by prior three-judge panels in unrelated contexts could be construed as indicating otherwise, this *en banc* panel is not bound by that language. This Court should hold that a defendant may only be punished for a drug conspiracy involving an aggravated drug type and

quantity if he specifically intended for the agreement to include that drug type and quantity.

## III. *Gentry*

While this Court should resolve the important mens rea questions discussed above in appellants' favor, it should also find that the scope of a defendant's conduct limits his liability for drug type and quantity under §§ 841(b) and 846. This Court has asked whether it should adopt the approach in *United States v. Gentry*, 941 F.3d 767, 785–86, 794 (5th Cir. 2019), quoting language from that opinion potentially suggesting the "disjunctive" test. While it is not clear which approach *Gentry* actually adopted, this Court should reject the "disjunctive" test and should adopt the "conjunctive" test set forth in the Sentencing Guidelines.

The lack of clarity in *Gentry* may be because the appellants in that case argued only that there was insufficient evidence to sustain their conspiracy convictions; they did not raise any objection to the jury instructions. *Id.* Thus, *Gentry* is a poor reference point for resolving the jury instruction claim in this case. In addressing the sufficiency of the evidence, *Gentry* listed the following elements for § 846:

(1) two or more persons *agreed to possess meth* with the intent to distribute it;

(2) [the defendant] knew of the unlawful purpose of the agreement;

(3) [the defendant] joined in the agreement willfully, that is, with intent to further its unlawful purpose;

(4) the overall scope of the conspiracy involved at least 50 grams of a mixture containing a detectable amount of meth;

(5) [the defendant] knew *or reasonably should have known* that the scope of the conspiracy involved at least 50 grams of a mixture containing a detectable amount of meth.

*Id.* (emphases added). Taking these elements at face value, it appears that *Gentry* requires a knowingly mens rea as to drug *type* (based on the initial prongs) but only a reasonable foreseeability mens rea as to drug *quantity* (based on the last prong).

As discussed earlier, appellants agree that a knowingly mens rea should apply to drug type. But the Fifth Circuit did not explain why it was applying a knowingly mens rea to drug type but only a reasonable foreseeability mens rea to drug quantity (assuming that is what it meant to do). The only case *Gentry* cites, *United States v. Franklin*, 561 F.3d 398, 402 (5th Cir. 2009), also involved a cursory discussion of a

sufficiency claim, not an instructional claim, and offers no insight.

Adding to the confusion, *Gentry* did not address *Anderson*, 932 F.3d at

352 &n.23, which, as explained above, suggests a more demanding

mens rea for conspiratorial violations and was decided by the Fifth

Circuit just three months before *Gentry*. *Gentry* simply did not address

the issues that are before this Court, and it certainly did not do so with

any detailed or persuasive reasoning. To the extent that *Gentry* can be

read as adopting the "disjunctive" test, this Court should reject it and

instead adopt the "conjunctive" test for the reasons previously argued

by appellants and discussed below.

*First*, Congress has repeatedly approved of the conjunctive test

articulated in the Guidelines for determining drug type and quantity

over the course of three decades, as recently as 2015. *See* 28 U.S.C.

§ 994(p). It is doubtful Congress would have intended for juries to make

findings that trigger onerous mandatory minimums based on a less

rigorous standard than that employed by the Guidelines. Likewise, it is

doubtful Congress would have intended for the double work and

potentially inconsistent results generated by two different tests. *See*

*Castillo v. United States*, 530 U.S. 120, 128 (2000) (interpreting statute

to avoid potential "conflict[s] between the judge and the jury" regarding a factual determination affecting the sentence).

*Second*, the Supreme Court has interpreted § 841(b) so as not to "undermine basic Federal Sentencing Guidelines objectives such as uniformity and proportionality in sentencing[,]" and has rested its construction of the statute "upon an analysis of the Guidelines-based sentencing system Congress has established [and] how the Guidelines interact with federal statutes setting forth specific terms of imprisonment." *Dorsey v. United States*, 567 U.S. 260, 264-65 (2012). There would be little reason to adopt a test that makes it easier to trigger draconian mandatory minimum penalties than the guidelines that are tied to those mandatory minimums. Instead, the statutory scheme and the Guidelines must be interpreted consistently, which means the conjunctive test should apply to both.

*Third*, the Supreme Court recently rejected the government's argument that mere reasonable foreseeability can justify monetary penalties for a defendant convicted under § 846. *See Honeycutt v. United States*, 137 S. Ct. 1626, 1634 (2017). In *Honeycutt*, the Court used an example of a college student who earns $3,600 as a courier in a

$3 million drug conspiracy. *Id.* at 1631-32. In rejecting the contention that the student's liability could be based on the reasonably foreseeable conduct of the entire conspiracy, the Court was struck by the potential disproportionate result: "Of the $3 million, $2,996,400 would have no connection whatsoever to the college student's participation in the crime." *Id.* at 1632. It would be even more unfair to send a student away for a mandatory ten years (or even the rest of his life) under a similar view of joint liability that merely requires reasonable foreseeability.

*Fourth*, § 841(b) applies to "any person" violating the statute, and requires the person's violation to "involve" a certain type and quantity of controlled substance. 21 U.S.C. § 841(b); *Honeycutt*, 137 S. Ct. at 1632. The Supreme Court recently reasoned that the statutory phrase "offense . . . involving" certain conduct was meant to capture "all offenders who engaged in certain conduct." *Shular v. United States*, ___ S. Ct. ___, No. 18-6662, 2020 WL 908904, at *7 (Feb. 26, 2020). Applying the same reasoning here, "offenses involving" certain types and quantities of drugs is meant to capture "all offenders who engaged in certain conduct" involving those types and quantities of drugs. Thus,

the relevant inquiry is whether the defendant—as opposed to his conspirators—was engaged in conduct involving the drug type and quantity, which corresponds with the "jointly undertaken activity" requirement in the conjunctive Guidelines test. *See, e.g.*, U.S.S.G. § 1B1.3 comment. (n.3) ("the scope of the specific *conduct* and objectives embraced by the defendant's agreement") (emphasis added).

*Fifth*, the conjunctive Guidelines test is consistent with *Pinkerton v. United States*, 328 U.S. 640 (1946), as properly interpreted. *United States v. Hamm*, ___ F.3d ___, 2020 WL 1071040 (6th Cir. March 6, 2020) (adopting narrow view of *Pinkerton* in the context of § 841(b) as set forth in the Guidelines). Liability under *Pinkerton* requires conduct to be: (1) "in furtherance of the conspiracy," (2) "within the scope of the unlawful project," and (3) "reasonably foreseeable as a necessary or natural consequence of the unlawful agreement." *Pinkerton,* 328 U.S. at 647-48. While the Supreme Court did not explain what the second prong entails, it must mean something different than simply "within the conspiracy" or else it would be redundant. The jointly undertaken activity requirement in the Guidelines is faithful to the second or "scope" prong of *Pinkerton*. *See* U.S.S.G. § 1B1.3 comment. (n.3)

("Because a count may be worded broadly and include the conduct of many participants over a period of time, the scope of the 'jointly undertaken criminal activity' is not necessarily the same as the scope of the entire conspiracy . . . . Accordingly, the accountability of the defendant for the acts of others is limited by the scope of his or her agreement to jointly undertake the particular criminal activity.").[8] The conjunctive Guidelines test is also consistent with the prevailing view "rejecting the conclusion that complicity is coextensive with conspiracy." 2 Subst. Crim. L. § 13.3(a) (3d ed.).

*Sixth*, to the extent there is doubt, the rules of lenity and constitutional doubt support the conjunctive test. As explained above, the rule of lenity applies where statutes are ambiguous as to the severity of sentencing. *See, supra, at p.19.* And basing criminal liability on an expansive (and incorrect) interpretation of *Pinkerton* can create significant constitutional questions. *See United States v. Castaneda*, 9

---

[8] The tightly-knit conspiracy alleged in *Pinkerton* was distinct from the far-flung conspiracies prosecuted in federal court today, including in this case. The defendants in *Pinkerton* were two brothers who lived on the same farm, and their "unlawful agreement contemplated precisely what was done." 328 U.S. at 641, 647.

F.3d 761, 766-68 (9th Cir. 1993). The conjunctive test avoids those questions and is the better and more lenient approach.

## CONCLUSION

For the foregoing reasons, the *en banc* panel should hold that the jury instructions on drug type and quantity were erroneous.

Respectfully submitted,

DATED:    March 16, 2020

*/s/ Benjamin L. Coleman*
BENJAMIN L. COLEMAN
Coleman & Balogh, LLP
1350 Columbia St. #600
San Diego, CA 92101
(619) 794-0420
Attorney for Defendant-Appellants

**CERTIFICATE OF COMPLIANCE**

PURSUANT TO FED R. APP. 32(A)(7) AND CIRCUIT RULE 32-1
FOR CASE NUMBER 18-50186

I certify that:

<u>X</u>    1.    Pursuant to the Court's order the attached supplemental brief is:

<u>X</u>    Proportionately spaced, has a typeface of 14 points or more and contains 9959 words.


DATED:   March 16, 2020   */s/ Benjamin L. Coleman*
                          BENJAMIN L. COLEMAN